ELLIS AMES BALLARD, Individually and as Trustee for F. S. HUNTING and Others, Appellant, *v.* THEODORE FRIEDEBERG, Respondent.

First Department, May 4, 1917.

Sale — pleading — sufficiency of allegations as to sale by plaintiff and purchase by defendant of property in possession of third party — evidence as to agency — substitution of written for oral contract.

A complaint which alleges that the plaintiff was the owner of certain property; that he sold and the defendant purchased the same, and that a part of the property was delivered by the plaintiff to the defendant, sufficiently alleges a sale.

Where in such an action it appears that after the representative of the company in possession of the property had made a contract with the defendant's representative, the defendant had written a letter to the company in possession, purporting to state the terms of the contract, it was reversible error to refuse to allow the plaintiff to show that the representative of the company in possession was acting as his agent in negotiating the sale, and a new trial should be granted.

In order to substitute a written contract for an oral contract the writing must be complete, expressing the understanding of both parties. A letter by one party without an answer by the other is insufficient.

APPEAL by the plaintiff, Ellis Ames Ballard, individually and as trustee, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 13th day of November, 1916, upon a dismissal of the complaint by direction of the court at the close of plaintiff's case.

*Samuel F. Moran,* for the appellant.

*Walter T. Kohn,* for the respondent.

SMITH, J.:

In the 1st paragraph of the complaint it is alleged: " At the time of the sale thereof to defendant hereinafter alleged, plaintiff, individually and as Trustee for F. S. Hunting, W. E. Mossman, L. P. Drayer, F. X. Diebold, H. F. Bachman & Company and Harry E. Kohn, was the owner of twelve (12) Baker High Duty Drill Presses known as Maker's No. 310." In the 3d

First Department, May, 1917. [Vol. 177.

paragraph of the complaint it is further alleged: "Heretofore and between April 5th, 1916, and April 8th, 1916, plaintiff sold and defendant purchased said twelve (12) Baker High Duty Drill Presses for the sum of $7,590.40 f. o. b. cars Philadelphia." The complaint further alleges that five of said presses were duly delivered by plaintiff to defendant and paid for, and that the plaintiff was ready and willing to deliver the remaining presses, but that the defendant refused to accept the same, and that the plaintiff had performed all the conditions of said agreement on his part to be performed, and the plaintiff notified the defendant that he held the presses as bailee for the defendant. The complaint admits payment of $3,200 for the five presses delivered, and asks judgment for the balance of $4,390.40. It is conceded that the defendant was doing business under the name of "Manhattan Machinery Co." as a trade name.

The defendant first contends that the complaint does not allege a sale by plaintiff to the defendant and a purchase by the defendant from the plaintiff of the presses in question. The allegation of the 3d paragraph set forth is that the plaintiff sold and the defendant purchased said twelve presses. It would seem as though by fair intendment the court would construe this allegation alone as sufficient to allege a purchase by the defendant of the plaintiff, but such construction is made clear beyond cavil in the 1st paragraph of the complaint, which recites that at the time of the sale thereof to the defendant the plaintiff was the owner of said presses. If at the time of the sale to defendant plaintiff was the owner of the presses, the sale to defendant could only have been made by the plaintiff. There are other allegations in the complaint of a delivery of part of the presses by the plaintiff to the defendant and of performance by the plaintiff of all the conditions of said agreement on his part and of the amount owing by the defendant to the plaintiff upon said sale, which serve if necessary to strengthen the inference otherwise irresistible that the plaintiff meant to allege a sale by himself to the defendant and a purchase by the defendant from himself.

The plaintiff showed upon the trial an agreement of sale made between one Pitt and one Gath representing the defendant, under which agreement the five presses were to be .

delivered forthwith and the seven presses were to be delivered by May first, at the price of $640 each, or if not delivered on May tenth, two per cent should be deducted from the price. This last agreement as to the contingency of the delay from May first to May tenth is sworn to have been made at a later date than was the first agreement. It was possible to modify that first agreement by this subsequent agreement if the minds of the parties met to that end.

Plaintiff then sought to show that Pitt was the foreman of the Santo Manufacturing Company which had possession of these presses, and that the possession of the Santo Manufacturing Company was under the plaintiff and that the Santo Manufacturing Company and Pitt as the manager thereof were his agents in making the sale of said presses to the defendant. The rule was recognized by the trial court that a sale by an agent of an undisclosed principal gave to the principal authority to sue, although the agent might sell the property as his own, but it appeared that after Pitt had made the original contract with the defendant's representative the defendant had written a letter to the Santo Manufacturing Company purporting to state the terms of the contract, and the trial court was of the opinion that this fact established Pitt's agency as the agent of the Santo Manufacturing Company, and the plaintiff was not allowed to show that Pitt was acting as his agent in the sale of these presses. In this we think the trial court was in error. Pitt might well have been the general manager in the Santo Manufacturing Company, and if the Santo Manufacturing Company held these presses belonging to the plaintiff and had authority to sell them, the act of Pitt as its general manager would be in the execution of the agency of the Santo Manufacturing Company, to sell these presses for the plaintiff. The plaintiff should have been allowed, therefore, to show his ownership of the presses and the authority of Pitt to sell them for him, and for the refusal of the trial court to permit such proof this judgment should be reversed and a new trial granted.

A greater difficulty lies in the defendant's contention that the contract as originally made providing for delivery on the first of May was confirmed by correspondence which made it a

First Department, May, 1917.                    [Vol. 177.

written contract, and that the plaintiff without pleading the same was not authorized to show a modification of that written contract by parol at a later date to the effect that the delivery might be delayed until the tenth day of May upon a reduction of two per cent in the price. A letter appears in evidence from the defendant to the Santo Manufacturing Company of date April seventh purporting to state the terms of the contract theretofore made, and in this letter May first is named as the date of shipment. In the first place, no answer to this letter from the Santo Manufacturing Company has been shown, and in order to substitute the written contract for the oral contract the writings must be complete, expressing the understanding of both parties. But further it is claimed that after the making of the original contract and after the writing of this letter, the contract was modified by parol by including provision that if delivery were delayed from May first to May tenth the purchase price would be reduced by two per cent. It is upon this contract as thus modified that this plaintiff is here seeking to recover, and that the plaintiff intended to rest upon this contract as modified appears in the judgment asked for, which is the original contract price less the two per cent. This proof was not offered as indicating a waiver of the contract as made, but as indicating the ultimate contract upon which the plaintiff rests his cause of action.

The judgment should, therefore, be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., SCOTT, PAGE and DAVIS, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.